2001 UT 29

**Eddie ARREDONDO, a minor child, and Noe Arredondo and Orilyn Arredondo, individually and as parents and guardians of Eddie Arredondo, Plaintiffs and Appellants,**

v.

**AVIS RENT A CAR SYSTEM, INC., and Continental Casualty Company, Defendants and Appellees.**

No. 990351.

Supreme Court of Utah.

March 27, 2001.

Charles H. Thronson, Matthew J. Harmer, Christina Jepson Schmutz, Salt Lake City, for plaintiffs.

Allan L. Larson, Julianne P. Blanch, Salt Lake City, for defendants.

DURRANT, Justice:

¶ 1 Eddie, Noe, and Orilyn Arredondo filed a complaint against Kai Walston, Ortrud Walston, Avis Rent A Car System, Inc., and Continental Casualty Company. The Arre-

dondos sought to recover damages for injuries arising from an accident allegedly caused by Kai Walston's negligent and reckless driving of a car that his mother, Ortrud Walston, rented from Avis. The Arredondos also sought a judgment declaring that the insurance policy Ortrud Walston purchased from Avis and Continental provided liability insurance coverage for Kai Walston in this case. The Arredondos filed a motion for partial summary judgment on the declaratory judgment issue, and Avis and Continental filed a cross-motion for partial summary judgment on the same matter. The trial court granted Avis and Continental's cross-motion and dismissed Continental from the case, as it was not a party to any of the Arredondos' other claims. The court then directed entry of final judgment on the issue under rule 54(b) of the Utah Rules of Civil Procedure.[1] The Arredondos appeal the trial court's entry of partial summary judgment and subsequent dismissal of Continental as a party. We affirm.

## BACKGROUND

■ ¶ 2 "In reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.... We state the facts in this case accordingly." *Tretheway v. Miracle Mortgage, Inc.*, 2000 UT 12, ¶ 2, 995 P.2d 599 (citations omitted).

¶ 3 Ortrud Walston rented a 1996 Chevrolet Lumina from Avis on April 17, 1996. As part of the written rental agreement executed by Ortrud Walston (the "rental agreement"), she purchased liability insurance, which the Pathfinder Insurance Company provided to her as a renter of an Avis vehicle. The Pathfinder policy was designated as "primary" coverage and provided coverage to Ortrud Walston as well as certain other potential drivers of the rental car, namely, the renter's spouse, employer, "a regular fellow employee incidental to business duties[,] or someone who appears at the time of rental and signs an additional driver form." The Pathfinder policy would only apply to these other potential drivers, however, if Ortrud Walston gave them permission to drive the car and they were "at least 25 years old and ... capable and validly licensed driver[s]." Additionally, the agreement extended liability insurance coverage under the Pathfinder policy to a non-permitted driver "where the law extends coverage to a non-permitted driver." The policy covered "up to the minimum financial responsibility limits required by applicable law." [2]

¶ 4 As another part of the rental agreement, Ortrud Walston opted to purchase additional liability insurance, which Continental provided. The Continental Policy was designated as "excess" or "additional" coverage and provided up to $1,000,000 of liability coverage. It purported to apply only to "those persons[ ] renting a car from Avis ...

1. The rule provides, in pertinent part, as follows: When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, and/or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination by the court that there is no just reason for delay and upon an express direction for the entry of judgment.
Utah R.Civ.P. 54(b).

2. At the time of the accident, the minimum limits for a motor vehicle liability policy were set out in section 31A–22–304 of the Utah Code:
Policies containing motor vehicle liability coverage may not limit the insurer's liability under that coverage below the following:
(1) (a) $25,000 because of liability for bodily injury to or death of one person, arising out of the use of a motor vehicle in any one

accident; (b) subject to the limit for one person in Subsection (a), in the amount of $50,000 because of liability for bodily injury to or death of two or more persons arising out of the use of a motor vehicle in any one accident; and (c) in the amount of $15,000 because of liability for injury to, or destruction of, property of others arising out of the use of a motor vehicle in any one accident; or
(2) $65,000 in any one accident whether arising from bodily injury to or the death of others, or from destruction of, or damage to, the property of others.
Utah Code Ann. § 31A–22–304 (1994). While this section remains unaltered in the current version of the Utah Code, we recite the code provisions in effect at the time of the issuance of the policies and the accident throughout this opinion.

who have agreed in writing to accept additional liability insurance" and to "any authorized driver of the car . . . as such drivers are described in the rental agreement."

¶ 5 On April 19, 1996, two days after Ortrud Walston rented the car and purchased the Pathfinder and Continental policies, her seventeen-year-old son, Kai Walston, was driving the car on Jordan Canal Road in Taylorsville, Utah, when, allegedly, as a result of his negligent and reckless driving, the car struck Eddie Arredondo, who was riding a bicycle along the roadway. Eddie Arredondo suffered extensive injuries, resulting in over $350,000 in medical expenses.

¶ 6 The Arredondos filed a complaint against Kai Walston, Ortrud Walston, Avis, and Continental. The complaint included allegations of negligence, negligence per se, and recklessness. The Arredondos also sought a judgment declaring that the Continental policy provided liability insurance coverage for Kai Walston in this case. The Arredondos filed a motion for partial summary judgment on the declaratory judgment issue, arguing that, although Kai Walston was not covered by the terms of the Continental policy, Utah law required that policy to cover him to the same extent as the named insured because he was a blood relative of the named insured and lived in her household. Avis and Continental filed a cross-motion for partial summary judgment, contending that Utah law only demanded such coverage from policies purchased to satisfy the statutory security requirement and that, in this case, only the Pathfinder policy was purchased to meet that obligation. The trial court granted Avis and Continental's cross-motion and dismissed Continental from the case, as it was not a party to any of the Arredondos' other claims. The court then directed entry of final judgment on the issue under rule 54(b) of the Utah Rules of Civil Procedure. The Arredondos appeal the trial court's entry of partial summary judgment and subsequent dismissal of Continental as a party.

---

3. Again, we recite the code provisions in effect at the time of the issuance of the policies and the accident. We also note that none of the sections

## DISCUSSION

¶ 7 A trial court may properly grant a motion for summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Utah R.Civ.P. 56(c). We review the trial court's summary judgment ruling for correctness. *Price Dev. Co. v. Orem City,* 2000 UT 26, ¶ 9, 995 P.2d 1237.

¶ 8 The Continental policy does not provide coverage to Kai Walston under its own terms, and the parties do not argue otherwise. The issue before us is whether Utah law nevertheless requires the Continental policy to cover Kai Walston.

¶ 9 At the time of the accident, the Utah Code provided, "A rental company shall provide its renters with primary coverage meeting the requirements of Title 41, Chapter 12a, Financial Responsibility of Motor Vehicle Owners and Operators Act."[3] Utah Code Ann. § 31A–22–314 (1994). Title 41, Chapter 12a required, in pertinent part, that "every resident owner of a motor vehicle shall maintain owner's or operator's security in effect . . . at any time that the motor vehicle is operated on a highway within the state." Utah Code Ann. § 41–12a–301(2)(a) (Supp. 1995). "Owner's or operator's security" was defined, *inter alia,* as "an insurance policy or combination of policies conforming to Section 31A–22–302" of the Utah Code. Utah Code Ann. § 41–12a–103(9) (1993). Section 31A–22–302 provided, in relevant part, as follows:

(1) Every policy of insurance or combination of policies purchased to satisfy the owner's or operator's security requirement of Section 41–12a–301 shall include:

(a) motor vehicle liability coverage under Sections 31A–22–303 and 31A–22–304;

(b) uninsured motorist coverage under Section 31A–22–305, unless affirma-

of the Utah Code cited throughout this opinion has been substantially amended since that time.

tively waived under Subsection 31A–22–305(4); and

(c) underinsured motorist coverage under Section 31A–22–305, unless affirmatively waived under Subsection 31A–22–305(8)(c).

(2) Every policy of insurance or combination of policies, purchased to satisfy the owner's or operator's security requirement of Section 41–12a–301 . . . shall also include personal injury protection under Sections 31A–22–306 through 31A–22–309.

Utah Code Ann. § 31A–22–302(1)–(2) (1994).

¶ 10 The Arredondos argue the Continental policy was a "policy of insurance or [part of a] combination of policies [together with the Pathfinder policy] purchased to satisfy the owner's or operator's security requirement of Section 41–12a–301." *Id.* § 31A–22–302(1). Therefore, the argument continues, the Continental policy must provide "motor vehicle liability coverage under Sections 31A–22–303 and 31A–22–304." *Id.* § 31A–22–302(1)(a). The Arredondos further contend that, to provide "motor vehicle liability coverage under Section[ ] 31A–22–303," *id.,* the Continental policy must provide coverage to persons, such as Kai Walston, who are "related to the named insured by blood [and] who are residents of the named insured's household[,] . . . to the same extent as the named insured," *id.* § 31A–22–303(1)(c), regardless of the policy's own limitations on the scope of its coverage.

¶ 11 To address the Arredondos' argument, we must first determine whether the Continental policy was a "policy of insurance or [part of a] combination of policies purchased to satisfy the owner's or operator's security requirement of Section 41–12a–301." *Id.* § 31A–22–302(1). If it was, then we must determine whether it must, therefore, provide coverage to Kai Walston, as a blood relative of the named insured who resided in her household at the time of the accident, "to the same extent as the named insured." *Id.* § 31A–22–303(1)(c).

■ ¶ 12 " 'When faced with a question of statutory construction, we look first to the plain language of the statute.' " *C.T. v.*

*Johnson,* 1999 UT 35, ¶ 9, 977 P.2d 479 (quoting *Stephens v. Bonneville Travel, Inc.,* 935 P.2d 518, 520 (Utah 1997)). In so doing, " '[w]e presume that the legislature used each word advisedly and give effect to each term according to its ordinary and accepted meaning.' " *Id.* (quoting *Nelson v. Salt Lake County,* 905 P.2d 872, 875 (Utah 1995)). We will not " 'infer substantive terms into the text that are not already there. Rather, the interpretation must be based on the language used, and [we have] no power to rewrite the statute to conform to an intention not expressed.' " *Id.* (quoting *Berrett v. Purser & Edwards,* 876 P.2d 367, 370 (Utah 1994)).

¶ 13 The Arredondos argue that the correct interpretation of section 31A–22–302(1) is that any policy or combination of policies that actually satisfies the statutory security requirement was "purchased to satisfy" the requirement. We disagree. Under the Arredondos' interpretation, the statute would, effectively, be rewritten to govern "[e]very policy of insurance or combination of policies [*that satisfies*] the owner's or operator's security requirement of Section 41–12a–301." Utah Code Ann. § 31A–22–302(1). This flies in the face of this court's " 'fundamental duty to give effect, if possible, to every word of the statute,' " *Carlie v. Morgan,* 922 P.2d 1, 4 (Utah 1996) (quoting *Madsen v. Borthick,* 769 P.2d 245, 252 n. 11 (Utah 1988)), and distorts the "ordinary and accepted meaning" of the phrase "purchased to satisfy."

■ ¶ 14 Whether a policy or combination of policies was "*purchased to satisfy* the owner's or operator's security requirement of Section 41–12a–301," Utah Code Ann. § 31A–22–302 (emphasis added), hinges not on whether it actually satisfies the statutory security requirement, but rather whether it was *purchased for the purpose of satisfying* the statutory security requirement. This interpretation better reflects the "ordinary and accepted meaning" of the language used by the legislature.

¶ 15 With this interpretation in mind, we now turn to the policies at issue in this case. On the one hand, it is clear the Pathfinder policy was purchased to satisfy the statutory security requirement. In determining the purpose for which the Pathfinder policy was

purchased, it is unnecessary to look beyond the rental agreement between Ortrud Walston and Avis. That agreement designated the Pathfinder policy as the "primary" policy and explicitly stated that it provided coverage "up to the minimum financial responsibility limits required by applicable law." The agreement also expressly declared that the Pathfinder policy applied to drivers other than the named insured as required by law. In short, the Pathfinder policy was clearly designed to meet the statutory security requirement, and we conclude that it was purchased to "satisfy the owner's or operator's security requirement of Section 41–12a–301."

¶ 16 On the other hand, it is just as clear that the Continental policy was not purchased to satisfy the statutory security requirement. The Continental policy, by its own terms, provided only "excess" or, in the terms of the rental agreement, "additional," coverage, i.e., coverage beyond that which was already provided. Accordingly, this additional coverage merely supplemented the primary coverage from the Pathfinder policy, which, as noted above, was purchased to satisfy the statutory security requirement. Thus, the Continental policy was purchased for the purpose of providing coverage in excess of, not to satisfy, the statutory security requirement. This conclusion is further supported by the fact that, unlike the Pathfinder policy, the Continental policy limited its coverage to a set dollar amount and only purported to apply to the named insured and specific other additional insureds as designated by the rental agreement. There was no mention of complying with statutory requirements. We conclude this is because the Pathfinder policy was intended to meet those requirements, and, therefore, it was unnecessary for the Continental policy to meet those requirements as well.

¶ 17 We also disagree with the Arredondos' contention that section 31A–22–303(1)(c) applied to the Continental policy as it was part of a "combination of policies purchased to satisfy" the statutory security requirement. *Id.* § 31A–22–302(1). The two policies were not purchased together for the purpose of meeting the requirement. Rather, the Pathfinder policy was purchased to satisfy the requirement, and the Continental policy was purchased to provide excess coverage to the named insured.[4] Because we find the Continental policy was not a "policy of insurance or [part of a] combination of policies purchased to satisfy the owner's or operator's security requirement of Section 41–12a–301," *id.*, we do not address the Arredondos' contention that such a policy must provide coverage to persons who are "related to the named insured by blood [and] who are residents of the named insured's household[,] ... to the same extent as the named insured." *Id.* § 31A–22–303(1)(c).

## CONCLUSION

¶ 18 We conclude that the Continental policy was not purchased to satisfy the statutory security requirement. Accordingly, the coverage of that policy is governed by its own terms, excluding coverage of Kai Walston. We affirm the trial court's ruling granting Avis and Continental partial summary judgment and dismissing Continental.

¶ 19 Justice DURHAM and Judge ORME concur in Justice DURRANT'S opinion.

¶ 20 Having disqualified himself, Justice WILKINS does not participate herein; Court of Appeals Judge GREGORY K. ORME sat.

RUSSON, Associate Chief Justice, concurring:

¶ 21 I concur with the majority opinion that the Continental policy was not purchased to satisfy the statutory security requirement and therefore the coverage of that policy is governed by its own terms, excluding coverage of Kai Walston. I write separately, however, because of my concern for the proper application of the statutes in this case. This is not a case involving insurance procured by the *owner* of an automobile but,

---

4. We would be faced with a different question if, for instance, neither policy, standing alone, met the statutory security requirement, but the policies taken together had been tailored to meet that requirement. In such a case, the policies could be deemed a "combination of policies purchased to satisfy" the statutory security requirement. Utah Code Ann. § 31A–22–302(1).

rather, insurance procured by the *operator* of an Avis rental car. The distinction is important because of the statutory treatment of each. The parties, and consequently the trial court and the majority opinion, fail to take into consideration the distinction between insurance policies purchased by the *owners* of automobiles and insurance policies purchased by the *operators* of automobiles so clearly set forth in the applicable statutes. They also fail to consider those statutory sections dealing with car rental companies and "authorized drivers" in regard thereto. Proper analysis of the statutes is essential to reaching a correct conclusion in this case inasmuch as the insurance policies involved were operator policies purchased in conjunction with the rental of a car from Avis Rent A Car System, Inc.

¶ 22 The Utah statutes clearly recognize the distinction between insurance policies purchased by *owners* of automobiles and insurance policies purchased by *operators* of automobiles. Section 31A–22–303(1)(a)(ii)(A) of the Utah Code provides that an *owner* policy must insure not only the person named in the policy but also any other person using the named automobile with the express or implied permission of the named insured, as well as relatives of the named insured who are residents of the household. That subsection specifically states:

> (A) [I]f it is an *owner's* policy, designate by appropriate reference all the motor vehicles on which coverage is granted, insure the person named in the policy, insure any *other person using any named motor vehicle with the express or implied permission* of the named insured, and, except as provided in Subsection (7), *insure any person included in Subsection (1)(a)(iii)* against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of these motor vehicles within the United States and Canada, subject to limits exclusive of interest and costs, for each motor vehicle, in amounts not less than the minimum limits specified under Section 31A–22–304....

(Emphasis added.) Subsection(1)(a)(iii), referred to above, requires coverage under *owner* policies for relatives of the same

household. That section states that "except as provided in Subsection (7), [the owner policy shall] insure persons related to the named insured ... who are residents of the named insured's household."

¶ 23 However, subsection (B) of the same statute has different requirements as to non-owners who purchase *operator* policies. Section 31A–22–303(1)(a)(ii)(B) provides that an *operator* policy insures only the named insured for claims arising out of the insured's use of the non-owned vehicle. Specifically, that subsection states:

> (B) [I]f it is an *operator's* policy, insure the person named as insured against loss from the liability imposed upon him by law for damages arising out of the insured's use of any motor vehicle not owned by him, within the same territorial limits and with the same limits of liability as in an owner's policy under Subsection (1)(ii)(A)....

(Emphasis added.)

¶ 24 This subsection does not insure permissive users, nor does it refer to or incorporate subsection (1)(a)(iii), pertaining to relatives of the same household, as does subsection (A), covering *owner* policies. If the legislature had wanted *operator* policies to cover permissive users and relatives of the household, the statute would have so stated and by reference to subsection (1)(a)(iii) as it did in subsection (A) dealing with owner policies.

¶ 25 In fact, this is made even clearer in that the said statute provides that in the case of *owner* policies, where relatives of the same residence are insured, they can be specifically excluded from coverage under certain circumstances. The statute pertaining to owner policies, subsection (A), makes a specific exception for coverage to such persons as provided in subsection (7). It states that "except as provided in Subsection 7, [an owner policy] insure[s] any person included in Subsection (1)(a)(iii)." Subsection (7) reads:

> (7) A policy of motor vehicle liability coverage under Subsection 31A–22–302(1) may specifically exclude from coverage a person who is a resident of the named insured's household, including a person who usually makes his home in the same

household but temporarily lives elsewhere, if. . . .

It is significant that the subsection pertaining to an operator policy has no such exception. This obviously is so because by statute *only the operator* is insured under this subsection. In fact, the only qualification contained in the subsection covering operator policies is that the limits of liability will be the same as an owner policy specified in section 31A–22–304. (That section provides that insurance liability policies may not limit coverage below designated dollar amounts.)

¶ 26 Most important are those statutory sections that pertain directly to car rental companies. A car rental company is obligated to provide primary insurance coverage to a renter, and "renter" is defined as any person obtaining the use of an automobile under the terms of a rental agreement.

¶ 27 Specifically, section 31A–22–314(1) states:

A rental company shall provide its *renters* with *primary coverage* meeting the requirements of Title 41, Chapter 12a, Financial Responsibility of Motor Vehicle Owners and Operators Act, unless there is other valid or collectible insurance coverage.

(Emphasis added.)

¶ 28 Section 31A–22–311, dealing with rental cars, defines "renters." It also defines "authorized drivers" and in doing so does *not* include permissive users or relatives of the same residence. That section states:

As used in Sections 31A–22–312 [1] and 31A–22–314 [2]:

(1) "Authorized driver" means the person to whom the vehicle is rented and includes:

(a) his spouse if a licensed driver satisfying the rental company's minimum age requirement;

(b) his employer or coworker if engaged in business activity with the renter and if they are licensed drivers satisfying the rental company's minimum age requirement;

(c) any person who operates the vehicle during an emergency situation;

(d) any person who operates the vehicle while parking the vehicle at a commercial establishment; or

(e) any person expressly listed by the rental company on the rental agreement as an authorized driver.

Significantly, "authorized driver" of a rental car does not include relatives of the renter's household or persons who are permitted by the renter to drive the rented car.

¶ 29 It should also be noted that "authorized driver" is defined in the above statute as the person to whom the vehicle is rented and that "renter" is defined as that person obtaining the use of a private passenger motor vehicle from a rental company under the terms of a rental agreement.

¶ 30 Therefore, by statute, a rental company must provide primary liability insurance for the renter—that is, the person who rented the vehicle—and for his spouse, employer or co-worker, any person operating the vehicle in an emergency situation, any person parking the car in a commercial establishment, or any person expressly listed by the rental company on the rental agreement as an authorized driver. It is not obligated, however, to provide liability insurance for permissive users and/or relatives of the household.

¶ 31 As noted above, the insurance provided must meet the requirements of title 41, chapter 12a. Section 41–12a–103(9) states, " 'Owner's or operator's security,' 'owner's security,' or 'operator's security' means any of the following: (a) an insurance policy or combination of policies conforming to Section 31A–22–302. . . ."

¶ 32 Section 31A–22–302(1)(a) states:

(1) Every policy of insurance or combination of policies purchased to satisfy the owner's or operator's security requirement of Section 41–12a–301 shall include:

---

**1.** Section 31A–22–312 pertains to the personal liability of authorized drivers under certain circumstances.

**2.** Section 31A–22–314 is set forth above.

(a) motor vehicle liability coverage under Sections 31A–22–303 and 31A–22–304[.]

¶ 33 Section 31A–22–303 is the provision set forth above pertaining to *owner* and *operator* policies. (Section –304 sets forth the minimum dollar amounts to be provided in liability policies.)

¶ 34 Therefore, the statutes of the state of Utah require a car rental company to provide operator coverage insuring the person who rented the car, his or her spouse, and those persons designated in the statute as set forth above. The statutes do not require such coverage for permissive users or relatives who are residents of the operator's household.

¶ 35 In the case before us, Mrs. Walston rented a car from Avis Rent A Car. The rental agreement provided:

17. *WHO ELSE MAY DRIVE THE CAR,* ONLY MY SPOUSE, MY EMPLOYER OR A REGULAR FELLOW EMPLOYEE INCIDENTAL TO BUSINESS DUTIES OR SOMEONE WHO APPEARS AT THE TIME OF RENTAL AND SIGNS AN ADDITIONAL DRIVER FORM, MAY DRIVE THE CAR BUT ONLY WITH MY PRIOR PERMISSION. THE OTHER DRIVER MUST BE AT LEAST 25 YEARS OLD AND A CAPABLE AND VALIDLY LICENSED DRIVER.

¶ 36 As for liability insurance coverage, the rental agreement provided:

18. *LIABILITY INSURANCE,* ANYONE DRIVING THE CAR AS PERMITTED BY THIS AGREEMENT WILL BE PROTECTED AGAINST LIABILITY FOR CAUSING BODILY INJURY OR DEATH TO OTHERS OR DAMAGING THE PROPERTY OF SOMEONE OTHER THAN THE DRIVER AND/OR THE RENTER UP TO THE MINIMUM FINANCIAL RESPONSIBILITY LIMITS REQUIRED BY APPLICABLE LAW. THE LIMIT FOR BODILY INJURY SUSTAINED BY ONE PERSON INCLUDES ANY CLAIM FOR LOSS OF THAT PERSON'S CONSORTIUM OR SERVICES. WHERE THE LAW EX-
TENDS COVERAGE TO A NON–PERMITTED DRIVER, THE SAME LIMITS SHALL APPLY.

¶ 37 Therefore, the rental agreement had restrictions as to who was authorized to drive the rental car, and provided that those persons would be protected by liability insurance "up to the minimum financial responsibility limits required by applicable law." It should be noted that the agreement provided that "where the law extends coverage to a nonpermitted driver the same limits shall apply." However, in Utah, nonpermissive drivers are not required by statute to be covered by insurance. Only those persons designated and those persons driving with express or implied permission of the owner are deemed to be additional insureds, and that applies only to owner policies. As to operator policies, such permissive users are not required to be covered.

¶ 38 However, while the statutes provide certain requirements that all automobile insurance policies must meet, that does not prevent an insurance policy from providing greater coverage than required by statute. The automobile insurance policy must be examined to determine the coverage provided. If it fails to meet minimum statutory requirements, it will be construed to do so. If it exceeds minimum statutory requirements, it will be applied accordingly.

¶ 39 In this case, Mrs. Walston was provided with primary liability insurance coverage in the amount of $25,000. She was also provided with optional excess liability coverage in the amount of $1,000,000. The only issue before us is the applicability of the excess policy to Mrs. Walston's son Kai Walston, who was driving the car at the time of the accident. The trial court granted summary judgment in favor of Avis and Continental, ruling that the excess liability insurance policy did not provide liability coverage for Kai Walston.

¶ 40 The excess liability policy in question identified as insureds under the policy the named insured and as additional insureds "any authorized driver of the car . . . as such drivers are described in the rental agreement." Policy paras. II.g, h, i.

¶ 41 As we have already seen, the rental agreement designated "authorized drivers"

as the renter of the car, the renter's spouse, the renter's employer or a regular fellow employee incidental to business duties, and someone who appears at the time of the rental and signs an additional driver form. Kai Walston was not the named insured, nor was he the renter's spouse, nor was he the renter's employer or regular fellow employee incidental to business duties, nor was he someone who appeared at the time of rental and signed the additional driver form. Clearly, Kai Walston was not an authorized driver and was not covered by the excess liability policy. In fact, even if Kai Walston had been given permission by his mother to drive this rental car, he would not have been covered by the excess policy since this policy was an operator policy, not an owner policy.

¶ 42 The majority opinion declares that because the Continental excess policy was not purchased to satisfy the statutory security requirement, the coverage is governed by the terms of the policy which exclude coverage for Kai Walston. I agree with the majority opinion as far as it goes but believe that the complete reason for noncoverage of Kai Walston is that the Continental policy was not an *owner* policy but, rather, an *operator* policy with different statutory requirements as set forth above.

¶ 43 Chief Justice HOWE concurs in Associate Chief Justice RUSSON'S concurring opinion.