2001 UT 78

Ricky Lee SANDERS, individually, and in his capacity as the personal representative of the estate of Breanna Marie Loveless, deceased, Plaintiff and Appellant,

v.

Michael O. LEAVITT, in his capacity as Governor of the State of Utah et al., Defendants and Appellee.

No. 20000203.

Supreme Court of Utah.

Aug. 31, 2001.

Rehearing Denied Nov. 14, 2001.

D. Kevin DeGraw, St. George, for plaintiff.

Mark L. Shurtleff, Att'y Gen., Brent A. Burnett, Asst. Att'y Gen., M. David Eckersley, Salt Lake City, for defendants.

WILKINS, Justice:

¶ 1 Plaintiff appeals the dismissal of sixteen of the eighteen defendants named in plaintiff's complaint. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

¶ 2 Plaintiff Ricky Lee Sanders seeks damages for himself and on behalf of his nine-month-old daughter Breanna Marie Loveless, who died tragically from pneumonia. Plaintiff asserts that Bobbie Dawn Widdison, Breanna's mother, and Travis Widdison contributed to Breanna's death because they physically abused her and failed to provide her with adequate medical care. Plaintiff further contends that several state government officials, state government entities, and attorneys involved in the class action lawsuit of *David C. v. Michael O. Leavitt*, No. 93–C–206W (D. Utah filed Feb. 25, 1993), of which he contends Breanna was a member, are somehow responsible for, at least in part, Breanna's death.

¶ 3 Plaintiff's complaint lists several causes of action against eighteen defendants. Plaintiff named eight "state defendants." Of these eight state defendants, plaintiff first named six state officials: Michael O. Leavitt, in his capacity as Governor of the State of Utah; Kerry D. Steadman, in his capacity as Executive Director of the Department of Human Services of the State of Utah; Mary T. Noonan, in her capacity as Director of the Division of Child and Family Services of the State of Utah; Jan Graham, in her capacity as Attorney General of the State of Utah; Carol Clawson, in her capacity as Solicitor

---

1. We are reviewing orders from the district court granting motions to dismiss and a motion for summary judgment. When reviewing the order granting the motions to dismiss, we accept the factual allegations in the complaint as true and consider them, and all reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. *See, e.g., Krouse v. Bower,* 2001 UT 28, ¶ 2, 20 P.3d 895, 897. In reviewing a grant of summary judgment, we also view the facts and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. *See, e.g., Arredondo v. Avis Rent A Car Sys.,* 2001 UT 29, ¶ 2, 24 P.3d 928, 929. We recite the facts accordingly.

General of the State of Utah; and Linda Luinstra, in her capacity as an Assistant Attorney General for the State of Utah. He then named two State agencies: The Utah State Department of Human Services and the Division of Family Services.[2] Plaintiff further named four "attorney defendants": two individual attorneys, William Lee Grimm and Michael Patrick O'Brien, and two organizations that provide legal services, the National Center for Youth Law, and the law firm of Jones, Waldo, Holbrook, and McDonough, all of whom represented the plaintiffs' class in *David C.* Plaintiff also named as defendants the monitoring panel created pursuant to the settlement agreement[3] in *David C.;* including Pamela Atkinson, in her capacity as Chair of the monitoring panel, and Sherianne Cotterell and Larry Lunt, both members of the monitoring panel (collectively the "monitoring panel defendants").

¶ 4 Plaintiff alleged several legal theories against these eighteen defendants. Against the eight state defendants, he alleged wrongful death, breach of contract, and breach of the implied covenant of good faith and fair dealing. Against the four monitoring panel defendants, he alleged negligence. Against the four attorney defendants he alleged breach of fiduciary duty, breach of contract, and negligence. Against Bobbie Dawn and Travis Widdison he alleged wrongful death.

¶ 5 The gravamen of plaintiff's argument is that defendants somehow failed to meet their duty of care to Breanna. Plaintiff professes that the state defendants, attorney defendants, and monitoring panel defendants assumed some sort of duty to care for Breanna when they entered into the settlement agreement in the case of *David C.,* that they breached this assumed duty by allowing the Widdisons to physically abuse and fail to adequately care for Breanna, and that the breach of this duty caused or contributed to, at least in part, Breanna's death.

¶ 6 All of the defendants except Bobbie Dawn and Travis Widdison filed motions to dismiss.[4] The eight state defendants and the four monitoring panel defendants, all represented by the Utah Attorney General's Office, filed a motion to dismiss for lack of jurisdiction and failure to state a claim on March 19, 1998. The four attorney defendants filed their motion to dismiss on April 1, 1998. On July 15, 1998, the district court granted both motions, resulting in the dismissal of all of the defendants except for the Division of Child and Family Services (DCFS) and the Widdisons.

¶ 7 Regarding the attorney defendants' motion to dismiss, the district court did not indicate on what basis it granted the motion. We are thus left to assume it was based upon the contention that the attorney defendants did not owe a duty to protect Breanna from physical harm, an argument placed before the court in the attorney defendants' memorandum in support of the motion to dismiss, the plaintiff's opposition, and the attorney defendants' reply.[5]

¶ 8 In granting the motion to dismiss filed by the state defendants and the monitoring panel defendants, the district court provided reasoning. In sum, the district court dismissed all of the monitoring panel defendants and all of the state defendants, except for DCFS, for one of three reasons: (1) plaintiff failed to file a notice of claim required by section 63–30–12 of the Utah Code, (2) the court lacked jurisdiction to enforce the feder-

---

2. The Division of Family Services (DFS) is known today as the Division of Child and Family Services (DCFS), and we refer to the division by this name throughout the opinion. *See* Utah Code Ann. § 62A–4a–103 (2000), and amendment notes (explaining that the 1996 amendment changed the name to the Division of Child and Family Services).

3. The Settlement Agreement in the case of *David C.* was executed on May 17, 1994.

4. Defendants Bobbie Dawn Widdison and Travis Widdison failed to appear before the court and answer plaintiff's complaint. As a result, default certificates were entered against them by the trial court.

5. The attorney defendants argued that, as counsel for the plaintiffs' class in *David C.,* they did not assume a duty to protect Breanna from physical harm. Plaintiff countered that the attorney defendants "stood in a special relationship" with Breanna and owed her a duty of care because they "assumed duties in loco parentis" by virtue of the settlement agreement entered into on behalf of the plaintiffs' class in *David C.,* of which Breanna was a member.

al consent decree in *David C.* as a state court, or (3) the defendants did not owe a duty of care to Breanna. The district court dismissed "[c]ount I of plaintiff's complaint," the wrongful death action against the state defendants, for "failure to file a notice of claim as required by Utah Code Ann. § 63–30–12" as to all of the state defendants, except for DCFS.[6] The monitoring panel defendants were also dismissed because plaintiff failed to file a notice of claim. The district court dismissed "[c]ount II of plaintiff's complaint," the breach of contract claim against the state defendants, as to the eight state defendants and the four monitoring panel defendants for lack of jurisdiction to enforce the consent decree in *David C.* The district court dismissed "[c]ount III of plaintiff's complaint," the claim for breach of the implied covenant of good faith and fair dealing as to the same eight state defendants and the same four monitoring panel defendants, again for lack of jurisdiction to enforce the consent decree in *David C.* Finally, the district court dismissed "[c]ount IV," the negligence claim against the monitoring panel defendants, because "they did not owe a duty of care to Breanna Loveless."

¶ 9 Inasmuch as DCFS was not dismissed, DCFS filed a motion for summary judgment on November 4, 1998. DCFS argued that it was immune from suit under the Utah Governmental Immunity Act based upon the three-step approach in *Ledfors v. Emery County School District,* 849 P.2d 1162, 1164 (Utah 1993). DCFS reasoned (1) that its alleged negligence, failure to protect Breanna from assault and battery, was a governmental function, (2) that immunity was waived because the injury was proximately caused by the negligent act or omission of the DFS employees assigned to Breanna's case, but (3) that the assault and battery exception to the waiver of immunity applied. The State offered the testimony of Dr. Robert Kirschner, an expert who testified in the Widdison's criminal trial, to support its contention that Breanna's death arose out of assault or battery.

¶ 10 Interestingly, two motions in opposition to DCFS's motion for summary judgment were filed by different attorneys for plaintiff. On December 4, 1998, plaintiff's first lawyer filed a memorandum in opposition. In this first opposition to the motion, plaintiff offered the testimony of Dr. Edward Leis to contradict Dr. Kirschner's testimony. DCFS filed a reply on December 15, 1998. The court heard argument on December 20, 1998, and the court's minutes reflect that defendant's motion for summary judgment was granted. However, on August 3, 1999, the district court granted plaintiff's motion to strike evidence offered by DCFS in support of its motion for summary judgment, and the court further granted plaintiff time to file another opposition to DCFS's motion for summary judgment.

¶ 11 Plaintiff's second attorney, D. Kevin DeGraw, entered his appearance and filed the second opposition to DCFS's motion for summary judgment. This second opposition contains the autopsy report of Dr. Leis and an affidavit of Dr. Martin J. Nygaard, both of which plaintiff contends rebut Dr. Kirschner's conclusion that Breanna's death arose from assault and battery because her pneumonia was caused by the physical abuse she suffered. DCFS subsequently filed its reply, advocating that plaintiff failed to dispute that Breanna's death arose out of assault or battery.

¶ 12 The district court granted DCFS's motion for summary judgment. The district court declared that "[t]he testimony of Dr. Robert H. Kirschner, M.D., was accepted into the record" and "established that Breanna Loveless was a physically abused child, ... and that she developed pneumonia as a direct result of being an abused child." The district court further declared that Dr. Leis "testified that he didn't believe Breanna would have died of pneumonia in the absence of the effect of the physical trauma she also suffered." The district court then concluded that "[p]laintiff's expert, Martin J. Nygaard, M.D., does not go far enough to refute the existence of a causal connection between the pneumonia which caused Breanna's death

---

6. Plaintiff provided the Utah State Department of Family Services, Division of Child and Welfare

Services, with a notice of claim that was received on February 10, 1997.

and the physical abuse she suffered." Accordingly, plaintiff's complaint against DCFS was dismissed.

¶ 13 Plaintiff appeals the dismissal of all sixteen defendants dismissed by the trial court.

## ANALYSIS

¶ 14 Plaintiff frankly fails to make clear his argument. That said, it appears to us that plaintiff argues that the state defendants should not have been dismissed because the existing law regarding governmental immunity should be overturned, or, that this court should somehow clarify *Taylor ex rel. Taylor v. Ogden City School District*, 927 P.2d 159 (Utah 1996). With respect to the other defendants, the monitoring panel defendants and the attorney defendants, plaintiff appears to insist that the attorney defendants should not have been dismissed because the attorneys representing the class in *David C.* owed Breanna a duty, and the monitoring panel defendants also owed Breanna some type of duty. Plaintiff has not made clear, however, either in the briefs or after being invited to do so at oral argument, the nature of the duty owed by these defendants to Breanna.

¶ 15 The state defendants and the monitoring panel defendants argue that all but DCFS are immune because plaintiff failed to provide them with notice of his claim. In other words, because DCFS was the only state defendant to be notified of plaintiff's claim against it, as is required by section 63-30-12 of the Utah Code, DCFS is the only state defendant or monitoring panel defendant against whom plaintiff's complaint was not barred. The state defendants further contend, however, that even though it received a notice of claim, DCFS is also immune from suit in this case because Breanna's death arose out of an assault and battery. *See* Utah Code Ann. § 63-30-10(2) (1997).

¶ 16 The attorney defendants argue they were properly dismissed because, as counsel for the plaintiff class in the case of *David C.*, they never assumed a duty to protect Breanna and other members of the plaintiff class

from physical harm caused by third parties. The attorney defendants further insist that plaintiff's appeal is frivolous and that damages and attorney fees should be awarded pursuant to rule 33 of the Utah Rules of Appellate Procedure.

### A. All Defendants but the Division of Child and Family Services

¶ 17 All of the defendants except for DCFS were dismissed following motions to dismiss. "Because the propriety of a motion to dismiss is a question of law, we review for correctness, giving no deference to the decision of the trial court." *Krouse v. Bower*, 2001 UT 28, ¶ 2, 20 P.3d 895, 897 (citing *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 196 (Utah 1991)).

¶ 18 First, we conclude that all of the state defendants, except DCFS, were appropriately dismissed because plaintiff failed to provide them with notice of his claim as required by section 63-30-12 of the Utah Code. Plaintiff does not contest that he failed to do so. Consequently, plaintiff's claim against the state defendants is barred. *See* Utah Code Ann § 63-30-12 (1997).

¶ 19 Second, plaintiff's complaint against the monitoring panel defendants is also barred. It is well settled that judicial officers are absolutely immune from liability for damages for acts performed in their judicial capacities and committed within their judicial jurisdiction. *See, e.g., Forrester v. White*, 484 U.S. 219, 225–29, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988); *Bradley v. Fisher*, 13 Wall. 335, 20 L.Ed. 646 (1871). This absolute judicial immunity has been extended to others who perform functions closely related to the judicial process. *See Cleavinger v. Saxner*, 474 U.S. 193, 199–200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985). Because absolute immunity flows not from the status of the official, but from the nature of the responsibilities of the official, the United States Supreme Court has listed several factors, among others, as guidance for consideration in determining absolute as contrasted with qualified immunity:

(a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of

safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

*Cleavinger,* 474 U.S. at 202, 106 S.Ct. 496.

¶ 20 We conclude that the monitoring panel acts in a judicial role and is therefore immune from suit for the negligence alleged by plaintiff. The monitoring panel was devised as part of the settlement agreement between the State of Utah and the plaintiff class in the case of *David C.* The monitoring panel's purpose is to act on behalf of the federal district court to monitor compliance with the settlement agreement and report on whether the parties, particularly the defendants, comply with the settlement agreement. Specifically, the role of the monitoring panel is to determine "overall, systematic patterns of compliance or non-compliance, not on[ly] isolated instances...." The panel's findings are published as a public document. Before they are published, however, the findings are provided to counsel for both sides for suggestions regarding the redaction of privileged information. If the monitoring panel determines that the defendants are not in compliance, the decision is reviewable by the federal district court.

¶ 21 The monitoring panel must be able to perform its function of ensuring compliance without harassment or intimidation. The oversight by the federal district court, a safeguard, reduces the need for private damages actions as a means of controlling unconstitutional conduct, and sufficiently insulates the panel from political influence. The monitoring panel is controlled by the settlement agreement, and its responsibility to oversee compliance is the oversight of an adversarial situation. Finally, review by the district court of any decisions made by the monitoring panel ensures the correctability of error on appeal. In sum, the monitoring panel assists a judicial official, the federal district court, and acts under the court's direction and authority in performing functions closely tied to the judicial process.

¶ 22 As far as we can tell, plaintiff is requesting damages from the monitoring panel for negligence committed in its official quasi-judicial role. Furthermore, there is nothing in the complaint suggesting that the monitoring panel acted outside of its authority or quasi-judicial capacity. As a result, we conclude that the monitoring panel is entitled to judicial immunity from suit in this case.

¶ 23 Third, the trial court did not err in dismissing the attorney defendants. We find no compelling reason to conclude that the attorney defendants assumed, by virtue of representing the plaintiff class in the case of *David C.,* a duty to ensure Breanna's physical well-being, either to protect her and the other members of the class from physical abuse inflicted by third parties such as the Widdisons, or to ensure that she received proper medical care. Counsel did not assume a role in loco parentis. Moreover, plaintiff did not provide, nor are we aware of, any authority which imposes a duty upon counsel for a plaintiff's class to protect members of the class from abuse from third parties and care for their personal needs. Even further, when invited by the court to clarify the nature of the duty owed by the attorney defendants, plaintiff failed to articulate one. Accordingly, the attorney defendants were properly dismissed.

### B. The Division of Child and Family Services

¶ 24 The only defendant not yet accounted for, the Division of Child and Family Services, was also appropriately dismissed. We review the trial court's order granting summary judgment for correctness. *See, e.g., Price Dev. Co. v. Orem City,* 2000 UT 26, ¶ 9, 995 P.2d 1237, 1242. We conclude that the trial court did not err in granting DCFS's motion for summary judgment.

¶ 25 The district court concluded that DCFS was immune from suit under the Utah Governmental Immunity Act, Utah Code Ann. § 63–30–1 to –38 (1997). In *Ledfors v. Emery County School District,* 849 P.2d 1162 (Utah 1993), we explained the analytical framework for determining whether a governmental entity is immune from suit under

the Act. The *Ledfors* framework suggests a three-step inquiry:

First, was the activity the entity performed a governmental function and therefore immunized from suit by the general grant of immunity contained in section 63–30–3? Utah Code Ann. § 63–30–3 (1989) [now codified at section 63–30–3(1) ]. Second, if the activity was a governmental function, has some other section of the Act waived that blanket immunity? Third, if the blanket immunity has been waived, does the Act also contain an exception to that waiver which results in a retention of immunity against the particular claim asserted in this case?

*Id.* at 1164.

¶ 26 The district court, using *Ledfors* as a guide, properly applied the Act to the facts of this case in granting the motion for summary judgment. First, DCFS's actions or alleged failure to act through the individuals assigned to Breanna's case, Ms. Pamela Goodrich and her assistant, constitute a governmental function. The Act defines "governmental function" as:

any act, failure to act, operation, function, or undertaking of a governmental entity whether or not the act, failure to act, operation, function, or undertaking is characterized as governmental, proprietary, a core governmental function, unique to government, undertaken in a dual capacity, essential to or not essential to a government or governmental function, or could be performed by private enterprise or private persons.

Utah Code Ann. § 63–30–2(4)(a) (1997). Given this broad definition, the alleged actions or omissions of DCFS and its employees regarding Breanna in this case fall within the definition of a governmental function.

¶ 27 We next look to whether some section of the Act has waived that blanket immunity, and if so, whether an exception to that waiver exists, thereby retaining immunity. The version of section 63–30–10 in effect at the time of Breanna's death read, in relevant part:

(1) Immunity from suit of all governmental entities is waived for injury proximately caused by a negligent act or omission of an employee committed within the scope of employment except if the injury arises out of:

. . . .

(2) assault, battery, false imprisonment, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, or civil rights;

Utah Code Ann. § 63–30–10 (1989); *see also* Utah Code Ann. § 63–30–10 amendment notes (1997) (stating "[t]he 1996 amendment by ch. 159, effective July 1, 1996, added 'in connection with, or results from' to the end of the introductory paragraph").

¶ 28 Defendants argue immunity is retained because Breanna's death arose out of abuse inflicted by the Widdisons. Plaintiff argues that section 63–30–10(2) can be interpreted in two different ways. One interpretation is that immunity is retained regardless of who commits the battery. The other interpretation, the one proposed by plaintiff, is that immunity should be retained only if the battery is committed by the employee within the scope of employment.

¶ 29 We have previously held in several cases that immunity is retained under the Utah Governmental Immunity Act if an assault or battery is involved, regardless of who the tortfeasor is, and even if the assault or battery occurs as the result of the negligence of the state or state agent. *See, e.g., Ledfors,* 849 P.2d at 1165–67 (explaining that if the injury arises out of an assault or battery, immunity is retained, because the Act focuses on the cause of the injury or conduct out of which the injury arose, not on the status of the tortfeasor or on the plaintiff's theory of liability or the type of negligence alleged); *see also Higgins v. Salt Lake County,* 855 P.2d 231, 240 (Utah 1993) ("When we have considered claims that the state's negligence permitted an assault by a person who was not a state employee, we have held uniformly that the state is immune.") (citing, inter alia, *Ledfors,* 849 P.2d at 1165–67); *S.H. ex rel. R.H. v. State,* 865 P.2d 1363, 1364–65 (Utah 1993) (explaining that the Act focuses on the conduct or situa-

tion out of which the injury arose, not on the status of the party inflicting the injury); *Taylor ex rel. Taylor v. Ogden City Sch. Dist.*, 927 P.2d 159, 163–64 (Utah 1996) (explaining that the statutory language places no importance on the status of the assailant and that nothing suggests that the one committing the assault need be a governmental employee). Inasmuch as the status of the assailant who committed the assault or battery is irrelevant under our long-accepted interpretation of the Act, the question now is whether Breanna's death arose out of an assault or battery.

¶ 30 Rule 56(e) of the Utah Rules of Civil Procedure reads, in relevant part,

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

In support of its motion for summary judgment, DCFS presented specific facts that Breanna's death arose from assault or battery. Specifically, DCFS presented testimony from Dr. Robert Kirschner that Breanna suffered physical injuries that caused the pneumonia from which she ultimately died. The trial court concluded, as a matter of law, that plaintiff did not offer sufficient evidence to place at issue the evidence offered by DCFS that Breanna's death arose out of physical abuse.

¶ 31 DCFS's witness, Dr. Kirschner reviewed Breanna's autopsy records, medical records, and various documents relating to the investigation of her death. Dr. Kirschner concluded that Breanna was physically abused, that she suffered multiple blunt trauma injuries inflicted over a period of time, and that Breanna's physical injuries in fact caused the pneumonia from which she ultimately died. In an attempt to counter Dr. Kirschner's conclusion in its opposition to DCFS's motion for summary judgment, plaintiff offered testimony from Dr. Leis and an affidavit from Dr. Nygaard. Dr. Leis performed the autopsy on Breanna and, having also considered her medical records, concluded that Breanna died from pneumonia. However, Dr. Leis further testified that it was his opinion that physical trauma contributed to the pneumonia and death. Indeed, he stated that while it was possible that Breanna could have died of pneumonia absent physical abuse, he did not believe that was the case. Dr. Nygaard addressed the injuries present when Breanna died and described in Breanna's autopsy report, but he did not address prior abuse, the abuse that purportedly contributed to the pneumonia or myocarditis. Dr. Nygaard's affidavit concludes that "it is [his] medical opinion that it is more likely than not that Breanna would have died of pneumonia or myocarditis even if she did not have the blunt force trauma injuries that were described in Breanna's autopsy report." He states that Breanna's death was caused by pneumonia, not the physical injuries described in the autopsy report. He reasons that pneumonia is caused by a viral or bacterial infection, and not by blunt force trauma, and therefore the pneumonia was not caused by the specific blunt force and skeletal injuries noted in the autopsy report. However, while he states that Breanna likely would have died of pneumonia even if she was not abused, he does not address whether abuse did or did not contribute to the pneumonia. He never discusses whether the pneumonia could have been caused or aggravated by physical abuse.

¶ 32 Plaintiff argues that the jury could have found that Breanna's death was simply the result of pneumonia or myocarditis and did not arise out of an assault or battery and therefore summary judgment was improper. However, plaintiff failed to proffer evidence to contest the evidence offered by DCFS that Breanna's contraction of pneumonia, the cause of her death, was the result of physical abuse. As a result, summary judgment in favor of DCFS was proper.

### C. Damages for Frivolous Appeal

¶ 33 Finally, the attorney defendants contend that plaintiff's appeal of the district court's decision to dismiss them from the lawsuit has no support in the law or basis in

the facts alleged and is therefore frivolous. We agree.

¶ 34 Rule 33 of the Utah Rules of Appellate Procedure reads, in relevant part:

(a) *Damages for delay or frivolous appeal.* Except in a first appeal of right in a criminal case, if the court determines that a motion made or appeal taken under these rules is either frivolous or for delay, it shall award just damages, which may include single or double costs, as defined in Rule 34, and/or reasonable attorney fees, to the prevailing party. The court may order that the damages be paid by the party or by the party's attorney.

(b) *Definitions.* For the purposes of these rules, a frivolous appeal, motion, brief, or other paper is one that is not grounded in fact, not warranted by existing law, or not based on a good faith argument to extend, modify, or reverse existing law. . . .

(c) *Procedures.*

(1) The court may award damages upon request of any party or upon its own motion.

¶ 35 Plaintiff's appeal of the dismissal of the attorney defendants was not grounded in fact, not warranted by existing law, nor based on a good faith argument to extend, modify, or reverse existing law. Plaintiff's brief offers only a general conclusory statement that attorneys owe a duty to their clients, accompanied by two cases cited as authority. Neither case, however, is of any help in delineating the duty an attorney owes to members of a class he or she represents.[7] Plaintiff offers no authority or argument that the attorney defendants, in representing the class of which Breanna was a member, assumed a duty to ensure she received protection from battery by third persons and personal medical care. Even further, when invited to articulate a duty or at least a theory at argument, counsel was unable to do so. In short, plaintiff's appeal of the dismissal of the attorney defendants was a waste of time and resources of all concerned.

¶ 36 For these reasons we award reasonable attorney fees incurred on appeal to the attorney defendants. These shall be paid by plaintiff's attorney, not plaintiff. *See* Utah R.App. P. 33(a). We remand to the district court solely for a determination of the proper amount.

¶ 37 Affirmed.

¶ 38 Chief Justice HOWE and Associate Chief Justice RUSSON concur in Justice WILKINS' opinion.

¶ 39 Having disqualified himself, Justice DURRANT does not participate herein; Second District Judge W. BRENT WEST sat.

DURHAM, Justice, concurring in the result:

¶ 40 I feel constrained by stare decisis to join in the result of Part B of the majority's analysis. I wish to note, however, what I consider to be an ongoing problem created by this court's construction of section 63–30–10(1)(b), one that I believe should be addressed by the legislature. In my dissent in *Taylor ex rel. Taylor v. Ogden City School District*, 927 P.2d 159, 165–67 (Utah 1996), I detailed my conclusion that the language and legislative history of section 63–30–10(1)(b) strongly suggest that it was intended to retain immunity only for an assault or battery committed by a state employee, and that *Ledfors v. Emery County School District*, 849 P.2d 1162 (Utah 1993), was wrongly de-

---

7. The cases cited by plaintiff's counsel are of no assistance in explaining or defining the duties owed by an attorney to members of a class he or she represents in circumstances such as those presented in this case. *Margulies ex rel. Margulies v. Upchurch*, 696 P.2d 1195 (Utah 1985), involved the disqualification of counsel because of a conflict of interest arising from the representation of two clients. The opinion mentions that an attorney owes his or her client a fiduciary duty, a duty encompassing fidelity, confidentiality, honor, fair dealing, and full disclosure to the client, *id.* at 1201–02, but it provides no assistance regarding the nature of the duties alleged by plaintiff in this case, that an attorney somehow assumes an obligation to ensure an infant member of a class receives physical protection and medical care. *Breuer–Harrison Inc. v. Combe*, 799 P.2d 716 (Utah Ct.App.1990), contains general statements regarding when an attorney-client relationship is created, but it does not even mention in passing the duties owed once such a relationship is created, let alone discuss the duties owed in a case such as the instant one.

cided. I also noted that the Utah Senate made an effort to overrule the *Ledfors* construction in 1995:

Senator Robert F. Montgomery introduced Senate Bill 94, which would have changed section 63–30–10 to read; "Immunity from suit of all governmental agencies is waived ... except if the injury arises out of: ... (3) assault or battery, except that this exception does not apply when: ... (ii) the assault or battery was not committed by an employee of a governmental entity." *Id.* The Senate passed this amendment on February 17, 1995, with eighteen voting for and nine voting against the bill and two Senators absent. Utah Senate Journal, 51st Utah Leg., Gen. Sess., 550–51 (Feb. 17, 1995). The House, however, read the bill for a second time on the last day of the session but never voted on the bill before the end of the session. *See* Utah House Journal, 51st Utah Leg., Gen. Sess., 1022–23 (March 1, 1995).

*Id.* at 169 n. 7

¶ 41 Thereafter the matter appears to have slipped from legislative view.

¶ 42 I reference this history because I believe that the rule as it stands creates unfairness and inconsistency, which the legislature may yet wish to address. As Justice Stewart wrote in his dissenting opinion in *S.H. ex rel. R.H. v. State*, 865 P.2d 1363 (Utah 1993):

It is indefensible for a child who is [sexually abused and assaulted] by a negligently hired cab driver [hired to transport handicapped students to public school] to be able to recover from the State for an injury caused by the cab driver's negligently colliding with another automobile but not to be able to recover when that contractor assaults a child.

*Id.* at 1366.

¶ 43 It is equally disturbing for the rule to prevent, as in this case, a claim against

DCFS for negligence in the supervision and protection of an abused infant. The factual record in the case of *State v. Widdison*, 2001 UT 60, ¶ 12, 425 Utah Adv. Rep. 27, 28 P.3d 1278, establishes that DCFS had received information that Breanna had been abused and was in danger of further abuse a short time before her death.[1] In fact, a caseworker who had examined Breanna in her home on one prior occasion actually came to the home and was refused access by Breanna's mother, Bobbie Dawn Widdison, on the day before Breanna's death. *See id.* at n. 4. The record in that case did not disclose what, if anything, DCFS did thereafter, but Breanna was not seen by anyone from DCFS or removed from her home. She died less than forty-eight hours later.

¶ 44 It is possible that the State might be immune from negligence claims arising out of these circumstances on some other basis (e.g., the discretionary function exception), but it seems bizarre that the assault and battery rule should immunize from suit an agency whose primary function is to protect vulnerable children from physical abuse and neglect. In *S.H.*, the court agreed that the result was "unconscionable" but held that only the legislature could change the law. *See S.H.*, 865 P.2d at 1365. In *Ledfors*, the court expressed sympathy for the plight of a child viciously beaten by other students during an unsupervised physical education class, but again deferred to the legislature:

It is unfortunate that any parent who is required by state law to send his or her child to school lacks a civil remedy against negligent school personnel who fail to assure the child's safety at school. Nevertheless ... we are constrained by ... the Act. . . . It is [however] entirely within the legislature's power to permit all plaintiffs to whom the government owes a duty of

---

1. DCFS was notified of possible abuse by the hospital to which Breanna's mother brought her with a broken collarbone and multiple bruises, in different stages of healing, on several areas of her body. *Widdison*, 2001 UT 60, ¶ 12, 425 Utah Adv. Rep. 27, 28 P.3d 1278. The caseworker who examined her on that occasion allowed Breanna to go home with her mother on condition that DCFS would monitor the home twice a day.

*See id.* It was not clear whether this occurred, but the record showed that a DCFS worker saw Breanna on February 15th, and attempted to see her on February 20th, when the worker was prohibited from entering the apartment by Breanna's mother. *See id.* at n. 4. Breanna's death occurred around midnight the next day, February 21st. *See id.* at ¶ 15.

care based on a special relationship to bring suit for injuries arising out of a breach of that duty.

*Ledfors,* 849 P.2d at 1167. In view of these repeated references to the anomalies and unfairness created by the assault and battery exception, I write in hope that the legislature will re-examine its scope. If this court's construction has created an unintended result or poor public policy, in the legislature's view, the statute should be repaired. At the very least, it deserves some open discussion and debate in view of our frequent observation that it seems to create inconsistency and injustice.

WEST, Judge, concurring:

¶ 45 I concur with the majority opinion as written by Justice Wilkins. I write separately to concur with Justice Durham's specific suggestion that the Utah Legislature consider clarifying the scope of governmental immunity under Section 63–30–10(2) as it relates to assaultive behavior.