2001 UT App 271

**J.J.W., Plaintiff and Appellee,**

v.

**STATE of Utah, DIVISION OF CHILD AND FAMILY SERVICES, Defendant and Appellant.**

**No. 20000940–CA.**

Court of Appeals of Utah.

Sept. 13, 2001.

Mark L. Shurtleff, Attorney General, and Jeffrey S. Buckner, Attorney General's Office, Salt Lake City, for Appellant.

Eric T. Johnson, Ballard Spahr Andrews & Ingersoll, Salt Lake City, for Appellee.

Before JACKSON, Associate Presiding Judge, and BILLINGS and DAVIS, JJ.

## OPINION

DAVIS, Judge:

¶ 1 The State appeals the juvenile court's denial of the State's motion to dismiss J.J.W.'s petition for judicial review of an administrative decision of the Department of Human Services (DHS) and the juvenile court's grant of summary judgment in favor of J.J.W. applying its July 16, 1996 expungement order to the records of the Department of Child and Family Services (DCFS).[1]

## BACKGROUND

¶ 2 On October 28, 1991, a referent notified DCFS that J.J.W., then thirteen years old, was sexually abusing his sixteen year old sister. In response to the referral, DCFS contacted the Sandy City Police, and both agencies agreed to conduct joint interviews

---

**1.** The Division of Family Services is now known as the Division of Child and Family Services, thus we will refer to the agency as DCFS throughout this opinion.

of each child. During the joint interview of J.J.W., J.J.W. admitted to fondling his sister's breasts five to ten different times over the preceding several months.

¶ 3 DCFS continued its investigation of the allegations against J.J.W., and on November 25, 1991, DCFS substantiated the allegations against J.J.W., naming him as a perpetrator of sexual abuse. Consequently, DCFS placed J.J.W. on its management information system (Database)[2] indicating that J.J.W. sexually abused a child.

¶ 4 On December 11, 1991, the State filed a delinquency petition in juvenile court alleging that J.J.W. committed forcible sexual abuse on a minor. Subsequently, J.J.W. admitted to the allegations, and the juvenile court adjudicated J.J.W. as delinquent.[3] The juvenile court ordered J.J.W. into counseling and ordered him to complete community service.

¶ 5 Upon turning eighteen years old, J.J.W. petitioned the juvenile court to expunge his juvenile record. The court granted J.J.W.'s petition and ordered that "all records in the petitioner's case in the custody of [the juvenile court] and the records of: Sandy City Police Department ... be sealed except traffic matters." DCFS was neither notified of the expungement proceeding nor did the juvenile court specifically order DCFS to seal its records.

¶ 6 In 1998, pursuant to a newly-enacted law, DCFS notified J.J.W. that he had a right to challenge the substantiated finding of abuse recorded in the Database. This notice alerted J.J.W. that DCFS had substantiated a finding of child abuse against him and that his name was listed on the Database. In 1999, upon his return from a two-year mission for the Church of Jesus Christ of Latter-day Saints, J.J.W. petitioned DHS for a hearing to challenge DCFS's substantiated finding. On November 8, 1999, despite statutory provisions indicating that J.J.W. was not entitled to an administrative hearing to challenge DCFS's findings,[4] and although no administrative remedy was available, the DHS Office of Administrative Hearings conducted a hearing on J.J.W.'s petition. At this hearing, J.J.W. argued that DCFS was required to expunge its records pertaining to his sexual abuse of his sister because the juvenile court's expungement order applied to DCFS records. On January 7, 2000, DHS issued a written decision on J.J.W.'s petition. This decision did not address the merits of J.J.W.'s argument pertaining to the effect of the expungement. Rather, DHS remanded the matter to DCFS with instructions to conduct a risk assessment[5] in order to determine whether J.J.W. should be on the Database—this notwithstanding the agency's inability to either modify or remove J.J.W.'s record from the Database.

---

**2.** Unlike the sex offender registration database, *see* Utah Code Ann. § 77-27-21.5 (Supp.2000), the information contained in the Database is neither accessible by the general public nor is it considered public information. Information contained in the Database is used primarily for the management of DCFS cases and licensing purposes. Thus, access to information contained in the Database is limited to DCFS, the Office of Licensing, and the Bureau of Health Facility Licensure. DCFS may provide information contained in the Database to the Office of the Guardian ad Litem for the purpose of screening a person seeking a position in that office and DCFS may provide information to a person identified as a perpetrator.

**3.** The adjudication confirmed the "substantiated" status of J.J.W.'s record on the Database, and, as a result, the parties agree that no administrative procedure exists to remove or modify the record. *See infra* note 4.

**4.** Utah Code Ann. § 62A-4a-116.5(2)(f) (2000) provides that a person requesting an opportunity

to challenge a DCFS finding must submit their request within thirty days of receiving notice. This thirty-day deadline may be extended if they can demonstrate that compliance would be virtually impossible or unreasonably burdensome. *See id.* Further, section 62A-4a-116.5 states that a person may not challenge a finding if a court has made a determination based on the same underlying facts that child abuse occurred. *See id.* § 62A-4a-116.5(5)(a)(i).

**5.** Utah Code Ann. § 62A-4a-116 was amended in 1999 to provide that the term "substantiated," as it pertains to minors,

> means a finding that there is a reasonable basis to conclude that: ... a person under the age of 18: ... engaged in sexual behavior with or upon another child which indicated a significant risk to other children.... *"[S]ignificant risk" shall be determined in accordance with risk assessment tools and policies established by the division ....*

Utah Code Ann. § 62A-4a-116(4)(b) (Supp.1999) (emphasis added).

¶ 7 In response to DHS's administrative decision, J.J.W. petitioned the juvenile court for judicial review thereof. Although styled as a petition for judicial review, J.J.W. argued that DCFS had no jurisdiction to take any further action in the matter because of the prior expungement order and that DCFS was violating the juvenile court's expungement order because the Database had not been expunged. The State moved to dismiss J.J.W.'s petition for judicial review on the grounds that (1) the juvenile court lacked jurisdiction because J.J.W. failed to exhaust his administrative remedies; and (2) the juvenile court expungement statute did not apply to records contained in the Database. While the State's motion to dismiss was pending, J.J.W. moved for summary judgment. On July 31, 2000, the juvenile court held a hearing on the parties' motions. The juvenile court deemed J.J.W.'s "petition and motion for summary judgment to be a request for [the juvenile] court to apply its July 11, 1996 Order Expunging Record to [J.J.W.'s] child abuse substantiation." The juvenile court then denied the State's motion to dismiss, and granted summary judgment in favor of J.J.W. The State appeals.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 8 The State argues that the juvenile court lacked subject matter jurisdiction to address J.J.W.'s petition for judicial review. Whether the juvenile court had jurisdiction is a question of law which we review under a correction of error standard. *See In re A.M.S.*, 2000 UT App 182,¶ 11, 4 P.3d 95. Next, the State argues that the juvenile court lacked authority, under Utah Code Ann. § 78–3a–905 (Supp.2000), to order DCFS to expunge any reference to J.J.W. from its records. Whether the juvenile expungement statute provides the juvenile court with the authority to order DCFS to expunge a name from the Database presents a question of statutory interpretation, which we review for correctness. *See American Fork v. Pena-Flores*, 2000 UT App 323,¶ 5, 14 P.3d 698. The State also argues that the juvenile court denied DCFS due process when it applied the 1996 expungement order against DCFS because DCFS was not a party to the delinquency or expungement proceedings. "Due process challenges are questions of law that we review applying a correction of error standard." *West Valley City v. Roberts*, 1999 UT App 358,¶ 6, 993 P.2d 252. Finally, the State argues that the juvenile court erred when it granted J.J.W.'s motion for summary judgment. Whether the juvenile court erred in granting summary judgment is reviewed under a correction of error standard. *See Surety Underwriters v. E & C Trucking*, 2000 UT 71,¶ 14, 10 P.3d 338.

## ANALYSIS

### I. Jurisdiction of the Juvenile Court

¶ 9 First, the State argues that the juvenile court lacked jurisdiction to order DCFS to expunge its records pertaining to J.J.W. because (1) the DHS decision was not a final agency action; (2) J.J.W. failed to timely request the DHS hearing; and (3) the only remedy available to J.J.W. was under the Utah Administrative Procedures Act (UAPA).

■ ¶ 10 All of the foregoing jurisdictional arguments are based upon the assumption that the juvenile court proceedings were confined to a review of the decision of DHS pursuant to Utah Code Ann. § 62A–4a–116.5 (2000) (providing administrative process for challenging a finding and its inclusion in the Database). However, the pleadings squarely addressed the effect of expungement, and in its order and final judgment, the juvenile court stated: "The Court has jurisdiction and power to enforce its own orders and deems [J.J.W.'s] petition and motion for summary judgment to be a request for this Court to apply its July 11, 1996 Order Expunging Record to [J.J.W.'s] child abuse substantiation." Accordingly, the juvenile court did not review DHS's administrative decision pursuant to Utah Code Ann. § 63–46b–15(1)(a) (Supp.1999) (providing for juvenile court review of informal adjudicative proceedings relating to substantiated findings of abuse). Instead, the juvenile court exercised its jurisdiction pursuant to Utah Code Ann. § 78–3a–905 (Supp.2000) (allowing juvenile court to "order sealed all records in the petitioner's case in the custody of the juvenile court and

any records in the custody of any other agency"). Consequently, the juvenile court had jurisdiction to modify its 1996 expungement order. *See* Utah Code Ann. § 78–3a–120 (Supp.2000) ("The juvenile court may modify or set aside any order or decree made by it....").[6]

## II. The Juvenile Court's Authority to Expunge a DCFS Record

¶ 11 The State argues that the juvenile court erred when, pursuant to Utah Code Ann. § 78–3a–905 (Supp.2000) (the Juvenile Expungement Statute), the court ordered DCFS to expunge any reference to J.J.W. from its records. Specifically, the State asserts that the Juvenile Expungement Statute does not provide the juvenile court with the authority to expunge a record contained in the Database.

¶ 12 The Juvenile Expungement Statute states that upon making certain findings,[7] the juvenile court "shall order sealed all records in the petitioner's case in the custody of the juvenile court *and any records in the custody of any other agency* or official pertaining to the petitioner's adjudicated juvenile court cases, except fingerprint records." *Id.* § 78–3a–905(2)(a) (emphasis added).

### A. Expungement vs. Administrative Remedies

¶ 13 As the State correctly points out, expungement is not an administrative remedy under the Utah Administrative Code. *See* Utah Admin. Code R512–25–5(D) (1999) (stating if person successfully challenges a finding, DCFS will change substantiated finding to unsubstantiated in agency records);[8] *see also* Utah Code Ann. § 63–46b–

17(1)(b)(i), (ii) (1997) (stating, in review of administrative proceeding, court may only order agency to take action required by law or to exercise discretion required by law). However, the fact that expungement is not an available administrative remedy is irrelevant because the juvenile court's order was based upon the Juvenile Expungement Statute[9] rather than UAPA. Thus, we review the correctness of the juvenile court's expungement order under the Juvenile Expungement Statute rather than the UAPA.

### B. Conflict Between the Juvenile Expungement Statute and Section 62A–4a–116.5

¶ 14 The State next argues that the Juvenile Expungement Statute and Utah Code Ann. § 62A–4a–116.5 (Supp.2000) (the Administrative Challenge Statute) are in conflict, and the juvenile court erroneously applied the more general Juvenile Expungement Statute.

¶ 15 The State correctly notes, "where two statutes treat the same subject matter, and one statute is general while the other is specific, the specific provision controls." *Floyd v. Western Surgical Assocs.*, 773 P.2d 401, 404 (Utah Ct.App.1989). However, "[i]t is our duty to construe each act of the [L]egislature so as to give it full force and effect. When a construction of an act will bring it into serious conflict with another act, our duty is to construe the acts to be in harmony and avoid conflicts." *Jerz v. Salt Lake County*, 822 P.2d 770, 773 (Utah 1991); *see also, Murray City v. Hall*, 663 P.2d 1314, 1318 (Utah 1983).

¶ 16 Here, the State argues that the Administrative Challenge Statute conflicts with

---

6. We note that, under the facts and procedural posture of this case, together with the provisions of section 62A–4a–116.5, no administrative relief was available to J.J.W. *See* Utah Code Ann. § 62A–4a–116.5(5)(a)(i) (2000) (stating that a person may not challenge a finding if a court has made a determination based on the same underlying facts that child abuse occurred).

7. Before expunging a juvenile's record, the court must find the following: (1) the petitioner has not been convicted of a felony or of a misdemeanor involving moral turpitude since termination of the court's jurisdiction; (2) there is no

proceeding involving a felony or misdemeanor pending or being instituted against petitioner; and (3) the rehabilitation of the petitioner has been attained to the satisfaction of the court. *See Utah Code Ann.* § 78–3a–905(2)(a).

8. *See supra*, n. 6.

9. The Juvenile Expungement Statute explicitly provides for expungement. *See* Utah Code Ann. § 78–3a–905 (2)(a) (Supp.2000) (stating juvenile court may order sealed "any records in the custody of any other agency").

the Juvenile Expungement Statute because the Administrative Challenge Statute only allows DCFS to change a finding to unsubstantiated rather than expunge or seal a record in the Database. *See* Utah Code Ann. §§ 62A–4a–116 to –116.5 (Supp.2000). While it is true that the Administrative Challenge Statute does not provide for expungement, we do not find that the two statutes are in conflict. Specifically, the Administrative Challenge Statute addresses the administrative options available to DCFS regarding its Database. However, because those options do not include expungement of a challenged finding, it does not follow that the Administrative Challenge Statute bars the juvenile court from expunging a record from the Database. Rather than conflicting, the two statutes specify the authority that two branches of government have with respect to records involving juveniles. Thus, there is no conflict between the Administrative Challenge Statute and the Juvenile Expungement Statute, and we reject the State's argument that the Administrative Challenge Statute controls in this case. *See In re B.B.D.,* 1999 UT 70,¶ 26, 984 P.2d 967 (rejecting appellant's challenge after concluding there was no conflict between statutes).

### C. Application of Expungement Order to the Database

¶ 17 The State also argues that the juvenile court erred when it ordered DCFS to expunge its records pertaining to J.J.W. because the Juvenile Expungement Statute does not apply to DCFS records. First, the State urges us to interpret the phrase "pertaining to the petitioner's adjudicated juvenile court cases" to mean that the Juvenile Expungement Statute applies only to delinquency records.[10]

When faced with a question of statutory construction, we look first to the plain language of the statute. In so doing, we presume that the legislature used each word advisedly and give effect to each term according to its ordinary and accepted meaning. We will not infer substantive terms into the text that are not already there. Rather, the interpretation must be based on the language used, and [we have] no power to rewrite the statute to conform to an intention not expressed.

*Arredondo v. Avis Rent A Car Sys.*, 2001 UT 29,¶ 12, 418 Utah Adv. Rep. 3, 24 P.3d 928 (alteration in original) (quotations and citations omitted).

¶ 18 In the Juvenile Expungement Statute, the Legislature gave the juvenile court the authority to expunge "*any* records in the custody of *any* other agency." Utah Code Ann. § 78–3a–905(2)(a) (Supp.2000) (emphasis added). "[W]e presume that the [L]egislature used [the term 'any'] advisedly and give effect to [this] term according to its ordinary and accepted meaning." *Arredondo,* 2001 UT 29 at ¶ 12, 24 P.3d 928. In doing so, we conclude that the plain language of section 78–3a–905 grants the juvenile court broad authority to expunge records, and we will not interpret the statute to "conform to an intention not expressed." *Id.* Thus, we reject the State's argument that the Juvenile Expungement Statute cannot apply to DCFS records.

¶ 19 The State also argues that, here, the Juvenile Expungement Statute does not provide the juvenile court with the authority to expunge DCFS's records regarding J.J.W. because the records did not pertain to J.J.W.'s prior adjudication. *See* Utah Code Ann. § 78–3a–905(2)(a) (Supp.2000) (stating juvenile court may order sealed "any records in the custody of any other agency or official pertaining to the petitioner's adjudicated juvenile court cases"). We disagree.

---

10. We note that the State does not define what constitutes a delinquency record. The State merely distinguishes the role of DCFS from that of the juvenile court and concludes that DCFS records are not delinquency records because DCFS is not responsible for the enforcement of criminal laws. While this may be true as far as it goes, the State ignores the fact that once DCFS receives an initial report of child abuse or neglect, the agency must immediately notify the appropriate law enforcement agency. *See* Utah Code Ann. § 62A–4a–403 (2000). After reporting the abuse or neglect, DCFS "shall, in addition to its own investigation, comply with and *lend support to investigations by law enforcement.*" *Id.* (emphasis added). Thus, it is quite possible for DCFS records to be delinquency records because the agency may have initiated the criminal enforcement action, and participated in the criminal investigation.

¶ 20 DCFS received a report that J.J.W. was sexually abusing his sister. DCFS then notified the Sandy City Police Department of the sexual abuse allegations. Shortly thereafter, both DCFS and the Sandy City Police Department conducted a joint interview of J.J.W. At this joint interview, J.J.W. confessed to the sexual abuse. As a result of this confession, the police filed a delinquency petition against J.J.W., and DCFS substantiated a finding that J.J.W. sexually abused his sister. Thus, DCFS's records concerning J.J.W. pertain to J.J.W.'s adjudicated case because: (1) DCFS informed the Sandy City Police of the abuse allegations, thereby initiating the delinquency investigation; and (2) DCFS substantiated its finding of sexual abuse based upon J.J.W.'s confession, which was obtained during the delinquency investigation and further substantiated by J.J.W.'s adjudication.

D. The Juvenile Expungement Statute's relation to Utah Code Ann. §§ 77–18–9 to –17 (1999)

¶ 21 The State next argues that the juvenile court did not have the authority to order DCFS to expunge J.J.W.'s records because the Juvenile Expungement Statute should be interpreted the same as Utah Code Ann. §§ 77–18–9 to –17 (1999) (the Criminal Expungement Statute). Specifically, the State argues that the Criminal Expungement Statute defines "expungement" as the "sealing or destruction of a criminal record, including records of the investigation, arrest, detention, or conviction of the petitioner." Utah Code Ann. § 77–18–9(5) (1999). Thus, the State reasons that the Juvenile Expungement Statute should be interpreted to apply only "to police records and those records which would be part of a criminal investigation" because the Juvenile Expungement Statute and the Criminal Expungement Statute are in pari materia.

¶ 22 "Statutes are considered to be in pari materia and thus must be construed together when they relate to the same person or thing, to the same class of persons or things, or have the same purpose or object." *Utah County v. Orem City*, 699 P.2d 707, 709 (Utah 1985) (footnote omitted).

¶ 23 Here, the two statutes do not relate to the same person or class of persons. The Juvenile Expungement Statute deals with records generated in connection with juvenile delinquency proceedings; whereas, the Criminal Expungement Statute deals with adult criminal records. *Compare* Utah Code Ann. § 78–3a–905 (Supp.2000), *with* Utah Code Ann. § 77–18–9(3) (1999). Further, the two statutes do not have the same purpose. The purpose of the Juvenile Expungement Statute is broader than the Criminal Expungement Statute. This purpose is evidenced by the language allowing the juvenile court to expunge "any records in the custody of any other agency or official." Utah Code Ann. § 78–3a–905(2)(a) (Supp. 2000). It is further evidenced by the fact that "[u]pon the entry of the order, the proceedings in the petitioner's case shall be considered never to have occurred." *Id.* § 78–3a–905(2)(b). In contrast, the Criminal Expungement Statute is more limited. For example, the Criminal Expungement Statute lists numerous criminal convictions which may not be expunged, including convictions for any sexual act against a minor. *See* Utah Code Ann. §§ 77–18–9, –11 (1999). Further, the Criminal Expungement Statute mandates that the Criminal Investigations and Technical Services Division of the Department of Public Safety (the Division) shall keep all expunged records. *See* Utah Code Ann. § 77–18–15 (1999). In addition, the Criminal Expungement Statute allows the Division to disseminate information regarding expunged records to several state and federal agencies. *See id.* Thus, the type of expungement available under the Criminal Expungement Statute is much more limited than the Juvenile Expungement Statute. Consequently, the Juvenile Expungement Statute and the Criminal Expungement Statute are not in pari materia and we will not construe them together.[11]

---

11. We also note that the Criminal Expungement Statute contains language similar to the Juvenile Expungement Statute giving the court broad au-

thority to enter an order expunging all records "in the custody of that court or in the custody of any other court, agency, or official." Utah Code

### E. The Enforcement of the Expungement Order

¶ 24 The State argues that the juvenile court's expungement order is unenforceable because the juvenile court provided no guidance on how to seal the electronic database. The State goes on to make the peculiar assertion that it is essentially impossible to expunge an electronic database because juvenile court files must be "sealed by a wax sealant or securely fastened so that any attempt to open the file will be evident." Utah R. Jud. Admin. 7–308(5)(C) (1999). This sealing procedure refers to juvenile court files, and has nothing to do with electronic databases. *Cf.* Utah R. Jud. Admin. 7–308(5)(B) (stating "[u]pon receipt of the [expungement] order, *all agencies shall remove from their files and computers* any information pertaining to petitioner") (emphasis added). Further, the juvenile court's expungement order explicitly directed DCFS "to remove [J.J.W.'s] name from any database or registry relating to the referrals made against him in 1991 and expunge any reference to his name from all of its files and records." The court did not order DCFS to seal information contained within the Database. On the contrary, the court ordered DCFS to remove J.J.W.'s name from the Database. Removal of a report from the Database is not only possible, it is anticipated in certain circumstances. *See* Utah Code Ann. § 62A–4a–116(2)(d) (describing reports that may be deleted from Database). Thus, the juvenile court's order was enforceable.

Ann. § 77–18–14(1) (1999). However, unlike the Juvenile Expungement Statute, the Legislature explicitly limited the district court's expungement authority. *See* Utah Code Ann. §§ 77–18–11(11), –12 (1999). Thus, it is reasonable to conclude that the Legislature intended to give the juvenile court broad authority with regard to expunging juvenile records.

12. At the time of the expungement hearing, DCFS was entitled to testify at the hearing. *See* Utah Code Ann. § 78–3a–905(1)(b)(ii) (1996) (stating "any other person who may have relevant information about the petitioner may testify at the hearing"). However, under the 1996 version of section 78–3a–905, the court was not required to notify the agency with custody of the

### III. Juvenile Court's Application of its 1996 Order to DCFS

¶ 25 The State argues that the juvenile court erred when it applied its 1996 expungement order to DCFS because DCFS was not a party to the 1996 proceedings.

◼◼ ¶ 26 The Utah Supreme Court has declared:

[D]ue process is not a technical conception with a fixed content unrelated to time, place, and circumstances. Instead, due process is flexible and, being based on the concept of fairness, should afford the procedural protections that the given situation demands. *The minimum requirements are adequate notice and an opportunity to be heard in a meaningful manner.*

*Dairy Product Servs., Inc. v. Wellsville City,* 2000 UT 81, ¶ 49, 13 P.3d 581 (quotations and citations omitted) (emphasis added).

◼ ¶ 27 Here, the juvenile court treated J.J.W.'s petition for judicial review as "a request to apply its July 11, 1996, Order Expunging Record to J.J.W.'s child abuse substantiation." The juvenile court then granted summary judgment in favor of J.J.W. based on the evidence presented in the 1996 expungement hearing and ordered DCFS to expunge J.J.W.'s name from its records. However, DCFS was not notified of the 1996 expungement hearing and DCFS was thus denied an opportunity to testify at the hearing.[12] Consequently, the juvenile court erred when it applied the 1996 order to DCFS because the agency was denied an opportunity to be heard in a meaningful way.[13] Unless and until DCFS is given an

records of the pendency of the petition. *Compare* Utah Code Ann. § 78–3a–905 (1996), *with* Utah Code Ann. § 78–3a–905 (Supp.2000). The fact that the statute did not require the court to notify DCFS does not affect our due process analysis. Further, the amendment to Utah Code Ann. § 78–3a–905 (Supp.2000) (mandating notice to agency with custody of records) underscores our conclusion that due process requires that any agency subject to an expungement order should be given notice and an opportunity to be heard.

13. While it is true that DCFS had an opportunity to be heard in the context of a hearing on whether to apply the 1996 expungement order to DCFS, DCFS did not have an opportunity to be

opportunity to fully participate in the expungement proceeding, the order expunging J.J.W.'s records is unenforceable against DCFS.

## CONCLUSION

¶ 28 Pursuant to the Juvenile Expungement Statute, the juvenile court had jurisdiction to order DCFS to expunge J.J.W.'s records. Further, the Juvenile Expungement Statute provides the juvenile court with the authority to expunge DCFS records, including records contained in the Database. However, the juvenile court erred when it applied its 1996 expungement order to DCFS because DCFS did not receive notice of that hearing and did not have an opportunity to

be heard in the context thereof. Consequently, we reverse the juvenile court's order requiring DCFS to expunge its records pertaining to J.J.W., and remand for further proceedings consistent with this opinion.[14]

¶ 29 WE CONCUR: NORMAN H. JACKSON, Associate Presiding Judge, and JUDITH M. BILLINGS, Judge.

---

heard in the context of the expungement hearing; and, if appropriate, challenge both the propriety and scope of expungement.

14. In light of our ruling, we do not address the State's arguments regarding the propriety of summary judgment.