2006 UT App 382

**STATE of Utah, in the interest of O.D., C.D., J.M., A.M., A.M., and A.M., persons under eighteen years of age.**

**J.M., Appellant,**

**v.**

**State of Utah, Appellee.**

**No. 20060053–CA.**

Court of Appeals of Utah.

Sept. 21, 2006.

Steven C. Russell, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Carol L.C. Verdoia, Asst. Atty. Gen., Salt Lake City, for Appellee.

Martha Pierce, Salt Lake City, Guardian Ad Litem.

Before BENCH, P.J., BILLINGS and McHUGH, JJ.

## OPINION

McHUGH, Judge:

¶ 1 J.M. (Stepfather) appeals from an adjudication trial in juvenile court wherein the court found that Stepfather had sexually abused O.D., his stepdaughter. We affirm.

## BACKGROUND

¶ 2 Stepfather began sexually abusing O.D. when she was eight or nine years old.[1] In 1998, Stepfather entered her bedroom during the night, removed her underwear, and touched her vagina for ten to fifteen minutes. O.D. related that when he was finished, he put her underwear on her backwards. Another incident of abuse occurred shortly before O.D. started the sixth grade. O.D. was in her room drawing pictures when Stepfather entered the room and told her it was time to learn about the "birds and the bees." As he began explaining sexual relations between men and women, he put his hands on O.D.'s breasts above her clothing and also put his hand under her shorts and rubbed her vagina skin to skin. O.D. described several other specific instances of sexual abuse by Stepfather. The abuse continued until 2002.

¶ 3 In 2002 and 2003, O.D. began exhibiting severe emotional and behavioral problems. She skipped school, did not get along with her sisters, associated with peers who were a bad influence, and shoplifted. In January 2003, when she was thirteen years old, O.D. took a bus from Utah to Los Angeles, California. At the bus station in Los Angeles, she met a man named MacBone who offered her a place to stay. MacBone convinced O.D. to become a prostitute, and he acted as her pimp. O.D. was arrested for prostitution and was put in a foster home. She ran away from the foster home and returned to live with MacBone. MacBone later decided that O.D. should go home. O.D. met her mother and Stepfather in Las Vegas so they could take her to Utah.

¶ 4 While back in Utah, O.D. attended counseling for about three months. On September 8, 2003, she headed to Los Angeles in the family car without permission. The car broke down along the way and she hitched a ride with a truck driver, returning to MacBone's house again. O.D. learned that MacBone was in jail, but someone at the house took O.D. to downtown Los Angeles, where she prostituted herself again. She was arrested again on September 9, 2003, and was placed in a detention center.

¶ 5 O.D.'s allegations that Stepfather sexually abused her surfaced for the first time during an interview with a police detective and an FBI agent who were investigating MacBone's crimes of exploiting children. Toward the beginning of the questioning, O.D. told the detective and the agent that she had been lured to California over the Internet. She later stated that she had left Utah because she was bored. The detective and the agent did not believe O.D.'s story and asked her if she had told them everything. It was then that O.D. told the investigators that Stepfather had sexually abused her.

¶ 6 The authorities in California contacted the Utah Division of Child and Family Services (DCFS) and told DCFS workers about O.D.'s allegations. O.D. continued to participate in treatment, but she recanted the allegations of abuse and, throughout the proceedings in juvenile court, continued to deny that it had ever happened. The juvenile

---

1. We recite the facts as found by the juvenile court.

court ultimately found that O.D.'s recantations were a result of extreme pressure from her mother, Stepfather, and siblings.

¶ 7 On April 19, 2005, DCFS filed a petition and a motion to have O.D. and her siblings placed in protective custody on an expedited basis. The petition alleged physical and sexual abuse of O.D. by Stepfather over an extended period, with additional abuse allegations stemming from incidents in Ireland with children from a previous marriage, and from incidents in Utah with his stepdaughters, female friends of his daughters, and a young woman from his church.

¶ 8 A shelter hearing[2] on the petition and motion began on May 2, 2005. According to the State and the Guardian Ad Litem, counsel for Stepfather[3] stipulated that both sides would present evidence at the shelter hearing that could also be considered as evidence in the subsequent adjudication hearing. This arrangement was allegedly agreeable to all parties because of the cost involved in bringing witnesses to Utah from out of state and out of the country. The shelter hearing took place over seven days throughout the months of May, July, and August 2005. At the end of the hearing, the juvenile court concluded that the allegations of sexual abuse were substantiated and ordered that O.D. and her two sisters be placed in DCFS custody.

¶ 9 The juvenile court subsequently entered an order titled "Taking of Judicial Notice" stating, for purposes of the approaching adjudication hearing, that the court would "take[ ] judicial notice of all testimony, exhibits, and stipulated matters which were admitted into evidence during the previous removal hearing." The juvenile court's order further provided that "[e]ach party may present additional evidence as they see fit at the [a]djudication [t]rial and will be given an

opportunity to present arguments as well," and that the court would determine what facts had been proven to a clear and convincing evidence standard.

¶ 10 The adjudication hearing was scheduled for September 26, 2005, but no evidence was taken on that date. Instead, the trial judge continued the proceedings to November 30, 2005, so that new counsel for Stepfather could prepare for the adjudication hearing. Counsel for Stepfather objected to the court's plan to take judicial notice of the prior proceedings. The trial court did not deviate from its previous order, but reiterated that either party could present additional evidence at the adjudication hearing. On January 3, 2006, the juvenile court concluded that Stepfather had abused O.D. and that she and her two sisters were at risk of sexual abuse and should be removed from the home.[4] Stepfather now appeals.

## ISSUES AND STANDARDS OF REVIEW

 ¶ 11 First, Stepfather argues that the juvenile court erred by taking judicial notice, for purposes of the adjudication hearing, of the testimony and evidence from the shelter hearing. "We review the juvenile court's judicial notice of prior adjudicated facts under [r]ule 201 of the Utah Rules of Evidence for abuse of discretion." *In re J.B.,* 2002 UT App 267, ¶ 14, 53 P.3d 958.

 ¶ 12 Second, Stepfather contends that there was insufficient evidence to show by a clear and convincing standard that Stepfather had sexually abused O.D.

When reviewing a juvenile court's decision for sufficiency of the evidence, we must consider all the facts, and all reasonable inferences which may be drawn therefrom,

---

**2.** In cases of child abuse or neglect, a shelter or removal hearing is held to determine whether the child should be removed from the family home. *See* Utah Code Ann. § 78–3a–306 (Supp. 2006). When children are removed based on exigent circumstances or pursuant to a court-issued warrant, the shelter hearing must be held within seventy-two hours of removal. *See id.; see also id.* §§ 62A–4a–202.1 (Supp.2006), 78–3a–106(4)(b)(i) (Supp.2006), 78–3a–301 (Supp. 2006). During a subsequent adjudication hearing, the juvenile court must use the clear and convincing evidence standard to determine

whether the allegations in the petition are true. *See id.* § 78–3a–310(1) (2002).

**3.** Stepfather was represented by different counsel at the shelter hearing than the attorney who represented him at the adjudication hearing and now represents him on appeal.

**4.** O.D. married on July 21, 2005. It is unclear from the record whether she was still living at home at this time.

in a light most favorable to the juvenile court's determination, reversing only when it is against the clear weight of the evidence, or if [we] otherwise reach[ ] a definite and firm conviction that a mistake has been made.

*In re V.T.*, 2000 UT App 189, ¶ 8, 5 P.3d 1234 (quotations and citations omitted). Stepfather must marshal the evidence in support of the findings and then "demonstrate that despite this evidence, the [juvenile] court's findings are so lacking in support as to be against the clear weight of the evidence." *In re L.N.*, 2004 UT App 120, ¶ 12, 91 P.3d 836 (alteration in original) (quotations and citation omitted).

## ANALYSIS

¶ 13 Stepfather first contends that he was denied due process when the court took judicial notice of the prior proceedings. He asserts that DCFS was improperly relieved of its burden to produce evidence and present witnesses at the adjudication hearing. Stepfather further argues that because he had obtained new counsel who had not been present at the shelter hearing, he was not afforded an adequate opportunity to confront and impeach witnesses at the adjudication hearing. The State and Guardian Ad Litem argue that Stepfather's prior counsel stipulated to the use of evidence admitted in the shelter hearing in the subsequent adjudication hearing because of the unusual expense involved in bringing witnesses from as far away as Ireland to testify. Appellate counsel for Stepfather, who was not involved in this matter at that time, disputes that such an agreement was reached. Despite argument from counsel for each of the parties relying on portions of the transcript below to either support or refute the existence of the stipulation, we cannot resolve that issue.

■■ ¶ 14 Stepfather failed to supply this court with transcripts of the seven days of testimony from the shelter hearing.

" 'Where the record before us is incomplete, we are unable to review the evidence as a whole and must therefore presume that the [decision] was supported by admissible and competent evidence.' " *Sampson v. Richins*, 770 P.2d 998, 1002 (Utah Ct.App.1989) (quoting *Smith v. Vuicich*, 699 P.2d 763, 765 (Utah 1985)).

Accordingly, because the entire record in this case is not before the court, we presume the trial court's findings are supported by competent and sufficient evidence, [h]owever, . . . the findings must themselves be sufficient to provide a sound foundation for the judgment, and conversely . . . any proper judgment can only be entered in accordance with the findings.

*Id.* (alteration and omissions in original) (quotations and citation omitted). Here, the juvenile court entered eighteen pages of findings, and these exhaustive findings clearly support its conclusions of law and judgment. In the absence of the complete transcript of the proceedings in the juvenile court, we presume that those findings are supported by the evidence presented during the seven-day shelter hearing and by the agreement of the parties that the evidence presented during the shelter hearing could be considered by the court during the subsequent adjudication hearing.[5]

■ ¶ 15 Further, we do not agree that Stepfather was denied due process because the counsel who represented him during the adjudication hearing was different from the counsel who appeared on his behalf at the prior shelter hearing. Stepfather participated and was represented in both proceedings. Indeed, Stepfather participated extensively in the shelter hearing. The juvenile court commented that Stepfather's counsel put on an "exhaustive defense" and that "well over half the evidence was elicited by [Stepfather's] attorney in this matter." *Cf. In re S.A.*, 2001 UT App 307, ¶ 27, 37 P.3d 1166 (remanding to juvenile court to conduct a new adjudication hearing because father had

---

5. By this ruling we do not hold that it is always appropriate to consider evidence presented at the shelter hearing in a subsequent adjudication hearing. Under the unique facts of this case, however, where Stepfather has failed to provide this court with the means to determine whether there was notice of and acquiescence to that procedure, we cannot undertake a due process analysis and must instead presume the regularity of the proceedings. *See Bevan v. J.H. Constr. Co.*, 669 P.2d 442, 443 (Utah 1983).

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

not participated in first adjudication hearing, resulting in denial of his due process rights); *J.J.W. v. State*, 2001 UT App 271, ¶ 27, 33 P.3d 59 (holding that the juvenile court erred by applying an expungement order to DCFS when DCFS had not participated in the expungement proceeding). Furthermore, although the trial court afforded both parties the opportunity to present "additional evidence" and arguments, Stepfather never asked to present new evidence during the adjudication trial. Stepfather fully participated in both the shelter hearing and the adjudication hearing through counsel.

¶ 16 Stepfather next argues that because the evidence presented at the shelter hearing could not be considered at the adjudication hearing, there was insufficient evidence to support the juvenile court's findings and conclusions. Because we disagree with Stepfather's premise that it was inappropriate under the unique facts of this case for the juvenile court to rely upon evidence presented at the shelter hearing in rendering its decision at the adjudication hearing, we likewise reject Stepfather's insufficiency of the evidence argument. Relying solely on the adjudication hearing, Stepfather asserts that the only evidence supporting the allegations of abuse were O.D.'s statements, which she later recanted. Yet, the findings of fact refer to extensive additional evidence received during the seven-day shelter hearing that Stepfather fails to address. Considering, as we must, "all the facts, and all reasonable inferences which may be drawn therefrom, in a light most favorable to the juvenile court's determination," we cannot say that the court's decision is "against the clear weight of the evidence," nor can we otherwise reach a "firm conviction that a mistake has been made." *In re V.T.*, 2000 UT App 189, ¶ 8, 5 P.3d 1234 (quotations and citations omitted).

## CONCLUSION

¶ 17 Without a complete transcript of the trial in the juvenile court, we must presume the regularity of those proceedings. Because of the unusual circumstances of this case, we cannot evaluate Stepfather's due process claims in the absence of the record that may contain his counsel's agreement to present evidence only once for both hearings. Furthermore, the evidence is sufficient to support the findings entered by the trial court.

¶ 18 Affirmed.

¶ 19 WE CONCUR: RUSSELL W. BENCH, Presiding Judge and JUDITH M. BILLINGS, Judge.